Williams, PJ.
Defendant Thomas J. Ruhan (“Ruhan”) has appealed the trial judge’s award of damages to plaintiffs Andrew E. and Kathleen O’Malley (together, “O’Malley”) for harm to their trees. Ruhan contends that the judge’s award was error whether it was based on the diminished value of O’Malley’s residential property, or on the replacement costs of the trees. Specifically, Ruhan argues that as to the former measure of damages, the only evidence at trial was that there was no diminution; and that any application of the latter measure of damages was improper. We find no error, and dismiss the appeal.
Following a bench trial, the judge found that O’Malley owned nine false cypress trees, 15 to 20 feet tall, which served as a screen along the property line between O’Malley’s house and Ruhan’s in South Yarmouth. Such trees are rare in this region. In July, 2003, branches of O’Malley’s trees overhung Ruhan’s property by several feet. Without notice to O’Malley, Ruhan’s landscaper pruned the offending limbs back to the trunks of the trees, thus rendering them permanently lopsided.[2]
The judge found that though the trees survived and indeed continue to serve as a screen, their aesthetic integrity “in a very prominent location in [O’Malley’s] front yard” had been spoiled as a result of the negligence of Ruhan’s agent.[3] The judge then found that the value of O’Malley’s property had been diminished by the same amount as the cost of replacing the trees (with similar Leyland cypress trees). O’Malley’s arborist expert had testified that the cost of replacing the damaged trees and establishing similar trees was $14,007.00. The judge awarded O’Malley that amount.
*178 Ruhan argues that the trial judge erred in fixing damages by equating the diminution of O’Malley’s property value with the replacement costs for the trees. Specifically, Ruhan submits that the proper rule for measuring such property damage as O’Malley claimed is diminution in market value, Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 48 (1987); see also, e.g., Rattigan v. Wile, 445 Mass. 850, 861 (2006), and no evidence was presented to support an award by that measure. As for a replacement-costs measure of damages, Ruhan argues that such standard is appropriate only in cases involving “special-purpose” properties for which no active market exists from which diminution in market value can be determined. See, e.g., Trinity Church, supra, at 49-50; Massachusetts Port Auth. v. Sciaba Constr. Corp., 54 Mass. App. Ct. 509, 517 (2002).
As noted, O’Malley’s arborist expert opined that replacement costs totaled $14,007.00. As far as this Rule 8A expedited appeal record reveals, Ruhan did not object to any aspect of that expert’s testimony, including his opinion as to replacement cost. Ruhan is, thus, ill-positioned to complain here that the judge improperly admitted that evidence, or relied upon it for her decision. See, e.g., Freyermuth v. Lutfy, 376 Mass. 612, 616-617, 620 n.8 (1978) (in absence of objection, expert's testimony to be accorded appropriate evidentiary weight) and cases cited; Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 11-12 (1998) (failure to object to testimony constitutes waiver of objection). Ruhan’s expert, on the other hand, apparently testified in essence that the mutilation of the trees did not diminish the value of O’Malley’s property at all; that is, that Ruhan’s negligence caused no harm of any kind to O’Malley. Although Ruhan did not object to the opinion of O’Malley’s expert witness, both parties have fully briefed and argued the core issue of the appropriate measure of damages available in a tree-damage case. We thus proceed to consider the issue. See, e.g., In Re Dutil, 437 Mass. 9, 21-22 (2002).
Our courts have addressed damages in tree-cutting cases in several ways. In Larabee v. Potvin Lumber Co., 390 Mass. 636 (1983), for example, the Supreme Judicial Court stated simply that “[ojne measure [of such damage] is the value of the timber... [and] [a]nother is the diminution in the value of the property as a result of the cutting. ... The plaintiff can opt for either measure.” Id. at 643. See also Murphy v. Town of Chatham, 41 Mass. App. Ct. 821, 826 n.3 (1996). In Lawrence v. O'Neill, 317 Mass. 393 (1944), on the other hand, damages were based on timber value. Id. at 397. Those two methods are not, however, the exclusive means of calculating damages in such cases.
In recognizing that restoration costs have been allowed when the diminished market value measure is unavailable or “unsatisfactory,” the Trinity Church Court favorably cited both Maloof v. United States, 242 F. Supp. 175, 183 (D. Md. 1965) and Heninger v. Dunn, 101 Cal. App. 3d 858, 864-865 (1980) in support of a third measure of damages; namely, the reasonable cost of replacing or replanting damaged trees and, thus, restoring the affected property to its predamage condition. Trinity Church, supra at 49-50. Heninger explicitly recognized that “courts throughout the country have placed a greater emphasis on the rights of a property owner to enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have little commercial value. ...” Heninger, supra at 864.[4] Heninger went on to cite cases from seven jurisdictions for the proposition that when trees “are destroyed by a trespasser, ‘sound principle and persuasive authority support the allowance to an aggrieved landowner of the fair costs of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in tire market value of the land ...'” (further citations omit *179 ted). Id. An award of damages based on restoration or replacement costs must, of course, be reasonable. Massachusetts Port Auth., supra, at 519, quoting Maloof supra, at 183 (a legitimate “measure of damages [in tree-damage cases] is the reasonable cost of restoring the property as nearly as reasonably possible to its original condition”). See also Trinity Church, supra, at 150. We do not find the judge’s award here to be otherwise, especially since the amount she awarded was based on the only damages figure in evidence (other than zero), which was admitted without objection.
The principle of permitting reasonable compensation in property damage cases discussed generally by numerous Massachusetts decisions, and articulated with specific reference to the aesthetic value of trees in Heninger, applies here. The judge’s phrasing of her award in terms of diminished market value as well as in such Heninger-style terms did not constitute error.
Appeal dismissed.
So ordered.

 It is true that “a neighbor has the right to remove so much of the tree [of his neighbor] as overhangs his property.” Ponte v. DaSilva, 388 Mass. 1008 (1983) (rescript), citing Michaelson v. Nutting, 275 Mass. 232, 233234 (1931) (neighbor’s right to cut off “intruding boughs and roots is well recognized”). Explication of the parameters of this right, though, is as scarce as palmetto palms on Cape Cod. Presumably, the right is one that must be exercised in a reasonable manner. There is, in any event, no indication in the record on this Rule 8A expedited appeal that the issue was raised before the trial court in any form.

 Section 7 of G.L.C. 242 addresses instances of someone who “willfully cuts down, carries away, girdles or otherwise destroys trees....” The court found for Ruhan on O’Mal-ley’s claim for “tree trespass” under G.L.C. 242, §7 because Ruhan’s pruning neither “destroy[ed],” nor “girdle[d],” the trees.

 Our adjacent sister-state, New Hampshire, recognized that an owner of shade trees could recover for their compromised “aesthetic value” at least as long ago as 1918. Barker v. Publishers’Paper Co., 103 A. 757, 759-760 (N.H. 1918), quoted in Maloof supra, at 183.