Brennan, J.
The sole argument on this appeal by plaintiff Consumer Product Distributors, Inc., d/b/a J. Polep Distribution Services (“J. Polep”), is that the trial court erred in assessing attorney’s fees in an amount less than the thirty-three and one-third (33 1/3%) percent specified in the parties’ contract.
This is a collection action filed by J. Polep to recover payment for commercial goods allegedly sold to the corporate defendant, Toy Town Pit Stop, Inc. (‘Toy Town”). J. Polep bases its attorney’s fees claim on a form “Credit Application, *43 Security Agreement and Personal Guarantee” (“credit application”) signed by defendant Arthur J. Rocheleau (“Rocheleau”) on behalf of Toy Town and individually, as guarantor. Attorney’s fees are referenced in a default provision of the credit application that granted J. Polep a security interest in the goods sold. The provision stated, in relevant part:
In the event of default, [J. Polep] is hereby granted the right to reclaim all goods... sold by it to [Toy Town] pursuant to a security interest in such goods, which is hereby granted to J. Polep.... The security interest shall secure the purchase price of all obligations of [Toy Town] due to J. Polep, including costs of collection and attorney’s fee [sic] in amount not less than 33 1/3 percent.
The “Personal Guaranty” (“guaranty”) provision at the bottom of the credit application form also provided, in part:
[T]he undersigned personally guarantees payment and performance of all obligations... owing to J. Polep... including any and all finance Charges, cost of collection and reasonable attorney’s fees in amount not less than 33 1/3 percent.
On January 22, 2009, after Rocheleau had failed to answer its complaint, J. Polep filed a Mass. R. Civ. P. 55 (6) (4) motion to assess damages against Rocheleau. That motion was not included in the very sparse Dist./Mun. Cts. R. A. D. A, Rule 8A, expedited appeal prepared and filed by J. Polep. Instead, a copy of an undated “Memorandum of Damages” by J. Polep’s lawyer was improperly submitted as an attachment to J. Polep’s brief rather than as part of the Rule 8A expedited appeal. The printed memorandum itemized the damages sought against Rocheleau as follows:
$7,413.80 Principal
$577.43 Interest at 18% through 2/09/09
$733.10 Costs
Attorney’s fees 33 1/3% pursuant to credit application and personal guaranty $2,663.78
Total due $11,388.22
The attorney’s fees amount was calculated as one-third of the total of the principal and interest claimed. The printed memorandum was amended by handwritten corrections that struck out the attorney’s fees request and inserted in its place “15% - $1,112.07,” and substituted “$9,836.51” as the total damages sought against Rocheleau. The corrected request calculated attorney’s fees at 15% of the principal only. A handwritten notation at the bottom of the page stated: “Pursuant to the court’s injunction regarding attorney’s fees, attorney’s fees reduced to 15%.” J. Polep has conceded that the handwritten changes were made by someone in its attorney’s office, not by the judge.
On February 10, 2009, a default judgment against Rocheleau was entered for the *44 exact amounts sought in the corrected memorandum of damages. A writ of execution on that judgment was issued on February 19, 2009.
On March 6,2009, J. Polep filed a Rule 55(b) (4) motion to assess default damages against Toy Town;[4] In an attached “memorandum of damages” by its lawyer, J. Polep sought the following:
Principal $7,413.80
Interest at 18% through 3/9/09 $681.70
Attorney’s fees 15% $1,214.33
Costs $828.03
Total Due $10,137.86
The memorandum recited that “without waiving plaintiffs claim for contractually agreed upon attorney’s fees in the amount set forth in the commercial credit application and its objection to any award of attorney’s fees less than the percentage set forth therein, at the direction of the court, [J. Polep] submits the within memorandum of damages.” The attorney’s fees sought were calculated as 15% of the total of principal and interest, not just of the principal. Damages were assessed by a second motion judge, and a default judgment against Toy Town for the specific damages requested in J. Polep’s memorandum was entered on March 24, 2009. J. Polep filed a notice of appeal on March 25, 2009. A writ of execution on the judgment against Toy Town was issued on April 9, 2009.
I. It is elementary that appellate review is necessarily restricted to questions of law, Baillargeon v. Kazanjian’s Garage, Inc., 2008 Mass. App. Div. 52, 53, “properly raised in the trial court and preserved for appellate review in the form of the trial court’s rulings.” Keystone Montessori School, Inc. v. Maloney, 2008 Mass. App. Div. 175, 177, quoting Ducker v. Ducker, 1997 Mass. App. Div. 147, 148. See Campbell v. Toner, 2006 Mass. App. Div. 121, 122. In this case, J. Polep’s Rule 8A expedited appeal actually recites that no ruling of law was requested in the trial court. The failure to raise and preserve an issue of law requires the dismissal of an appeal. Armstrong v. Lawson, 2006 Mass. App. Div. 34, 35.
J. Polep has framed the issue it seeks to have reviewed as whether the trial court erred in “sua sponte substituting] its discretion” in assessing attorney’s fees in place of the fee rate specified in the parties’ contract. The problem is that there is nothing in the record to substantiate any such definitive action by the court. At best, J. Polep’s Rule 8A record indicates that the court awarded default damages, including attorney’s fees, in the exact amounts sought in J. Polep’s two memoranda of damages after assessment hearings conducted by two different judges. While the handwritten notation on the first memorandum by someone in J. Polep’s lawyer’s office refers to an “injunction” by the first motion judge against any larger attorney’s fee award, obviously no “injunction” per se was issued, or appears on the record. There *45 is also nothing in the record to substantiate the assertion in J. Polep’s brief that the motion judge at the first assessment hearing against Rocheleau had “issued an Order that the Court would not consider any requisition for attorney’s fee [sic] in excess of 15%.” If, in fact, the first motion judge expressly ruled sua sponte at the assessment hearing that a 33 1/3% rate for attorney’s fees was excessive as a matter of law and that 15% was the maximum fee rate warranted in this case, J. Polep should have filed a motion to alter or amend the judgment, see, e.g., Rader v. Odermatt, 2008 Mass. App. Div. 154, or a motion for reconsideration, to obtain and preserve the court’s ruling on attorney’s fees. J. Polep failed to file a motion, or to take any other action to raise and preserve the issue.
J. Polep only compounded its problem by electing to proceed to this Division on the basis of a Rule 8A expedited appeal, a method of appeal that did not require a transcript of the assessment hearing at which the motion judge allegedly made the attorney’s fees ruling. A transcript would have at least revealed if J. Polep presented the same legal issues and arguments in support of its claim for contractual attorney’s fees at the hearing as it now advances on appeal. More importantly, a transcript would have disclosed if the motion judge actually ordered a reduction of the attorney’s fees to 15%, or instead merely commented extemporaneously during the hearing, see Lashus v. Slater, 2009 Mass. App. Div. 89, 92 n.5 (extemporaneous remarks during hearing not binding rulings by the court); Brito v. Loft & Ladle Restaurant, 2006 Mass. App. Div. 115, 116 (same), that J. Polep should consider reducing what appeared to be an excessive fees request, prompting J. Polep to make the reduction in the interest of securing an expeditious assessment of damages and an immediate entry of a default judgment against Rocheleau.
Further, the record fails to disclose whether J. Polep even attempted to raise the issue of contractual attorney’s fees and to obtain a ruling from the second motion judge who conducted the hearing for the assessment of damages against Toy Town. That judge would not have been bound by the first judge’s attorney’s fees assessment against Rocheleau. Hussain v. Cameron Constr. & Roofing Co., 2007 Mass. App. Div. 14, 16, quoting Riley v. Presnell, 409 Mass. 239, 242 (1991) (“‘[T]he power to reconsider an issue remains in the court until final judgment’ even when the judge is revisiting precisely the same motion decided by the first judge.”). But again, the record indicates only that the second judge awarded the exact damages amounts sought by J. Polep in its second memorandum, including 15% attorney’s fees.
In short, an appellate court cannot review an alleged ruling that is not presented to it, Chokel v. Genzyme Corp., 449 Mass. 272, 280 (2007), and an appellant cannot satisfy its burden of proving judicial error or abuse of discretion in the absence of an adequate record containing all material necessary for appellate review. Revere Housing Auth. v. Chouchos, 2008 Mass. App. Div. 163, 164.
2. In any event, even assuming that the first motion judge actually ruled as J. Polep suggests, we would find no error based on the arguments it has advanced on this appeal.
J. Polep’s sole contention on appeal is that the motion judge was required as a matter of law to award attorneys fees at the contractual rate of 331/2%, which it contends is the minimum rate for attorneys fees “institutionalized in the practice of the litigation bar.” Gagnom v. Shoblon, 409 Mass. 63, 70 (1991) (Greaney, J., concurring). In support of its contention, J. Polep relies to a large extent, however, on case law *46 dealing with contingent fee agreements in tort cases. In fact, the 33 1/3% attorney’s fee rate upheld in Gagnon was based on the parties’ contingent fee agreement and was identified by the Court as the “minimum rate to be charged in the typical tort case” (emphasis added). Id. at 70. As noted, this action by J. Polep is a collection case based on a commercial credit application with an attorney’s fees clause. The distinctions between these very different attorney’s fees provisions are obvious.
“[C]ontingent fee agreements constitute a valid and vital legal resource which enable plaintiffs with meritorious causes of action, but who lack funds to pay a lawyer, to obtain justice for themselves, and, in many cases, for others similarly situated.” Cambridge Trust Co. v. Hanify & King Professional Corp., 430 Mass. 472, 479 (1999). While the attorney and client parties to a contingent fee agreement negotiate its terms, reasonableness is an essential component of that process and of the resulting agreement, Saladini v. Righellis, 426 Mass. 231, 235 (1997), due to the “highly fiduciary” obligation, Malonis v. Harrington, 442 Mass. 692, 700 (2004), running from the attorney to the client. Opert v. Mellios, 415 Mass. 634, 638 (1993). Further, percentage factors of 33 1/3% in contingent fee agreements are acceptable, if not routine, because those agreements are utilized in cases in which a “successful result is far from certain.” Smith v. Consalvo, 37 Mass. App. Ct. 192, 196 (1994). “[T]he theory of the contingent fee... is to exchange the possibility of the client paying no fee should the case turn out badly for the possibility of a generous fee for the lawyer if the case turns out well. ...” Id. at 197. A “contingent fee compensates the lawyer not only for, the legal services [rendered] but for the loan of those services.” Id., quoting R. POSNER, ECONOMIC ANALYSIS OF LAW, §21.9, at 534-535 (3d ed. 1986). But even a contingent fee agreement, which is negotiated by the parties and governed by the attorney’s professional responsibilities, may still be examined by the court and enforced only if it is found to be reasonable. See, e.g., Berman v. Linnane, 424 Mass. 867, 871 (1997).
Conversely, this case is a straightforward collection action, not a tort case, to recover the fixed price of commercial goods sold. J. Polep’s action is based on a form credit application and guaranty, the terms of which were not negotiated by the parties. The form was instead created solely by J. Polep, which was unrestricted in drafting that form by any fiduciary duty or obligation of reasonableness. Thus, J. Polep’s credit application is analogous not to contingent fee agreements, but to form promissory notes or other documents deemed to be adhesion contracts. Even in those instances in which such an adhesion contract has provided for the recovery of “all” attorney’s fees, or of fees in the amount of a fixed percentage, the court has limited its award of legal fees to what it has found to be fair and reasonable. See Citizens Bank of Mass. v. Travers, 69 Mass. App. Ct. 174, 176-177 (2007); Trustees of Tufts College v. Ramsdell, 28 Mass. App. Ct. 584, 585 (1990); Bruce Campbell & Assocs., Inc. v. Carpionato Corp., No. 99-P-226 (Mass. App. Ct. Oct. 1, 2001) (unpublished Rule 1:28 decision); Rockland Trust Co. v. Langone, 2007 Mass. App. Div. 157, 159. J. Polep presented nothing in the trial court, or on this appeal, that would satisfy its burden of proving that the 15% attorney’s fees awarded here were unfair or unreasonable.
Appeal dismissed.
So ordered.

 J. Polep has offered no explanation for what appears to be a needless bifurcation of the damages assessments against Rocheleau and Toy Town. Despite the separate default judgments entered, J. Polep is obviously restricted to a single recovery of its damages in this case.